UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| L.A. PRINTEX INDUSTRIES, INC., a California corporation, | ) ) ) | CV 09-3382 SVW (CWx) |
| Plaintiff, | ) ) | |
| v. | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH LEAVE TO AMEND [13] |
| FOREVER 21, INC., a California corporation; DOES 1 through 10, | ) ) ) | |
| Defendant. | ) ) ) | |

## I.   INTRODUCTION

This case arises out of the alleged infringement of Plaintiff's fabric designs.  On May 13, 2009, Plaintiff L.A. Printex Industries, Inc. ("Plaintiff" or "LAP") brought a complaint for copyright infringement, alleging that Defendant Forever 21 ("Defendant" or "Forever 21") infringed on four fabric designs owned by Plaintiff.  On September 29, 2009, Defendant brought this Motion for Judgment on the Pleadings with regard to one of the four fabric designs.  Defendant argues that this design fails to meet the standard of originality necessary for copyright protection.

The motion came before the Court on October 26, 2009. For the reasons stated below, Defendant's Motion For Judgment on the Pleadings is hereby GRANTED, with leave to amend. Plaintiff shall have 20 days leave to amend the complaint.

**II. FACTS**

Plaintiff is company that creates graphic artworks for use on textiles, which are then sold primarily in the fashion industry. (Compl., Introduction.) Plaintiff alleges that it owns the copyrights to many fabric designs. (Id.) Defendant Forever 21 is a well-known retailer of women's clothing. Plaintiff alleges that certain Doe Defendants manufacture and/or sell garments to Forever 21, and that said Doe Defendants have sold or supplied fabrics printed with Plaintiff's copyrighted designs to Forever 21, without Plaintiff's consent. (Compl. ¶ 6.) Plaintiff further alleges that Forever 21 infringed upon its patent to four fabric designs by purchasing, distributing, and selling for profit garments depicting Plaintiff's designs. (Compl. ¶¶ 9-20.)

September 29, 2009, Defendant Forever 21 brought this Motion for Judgment on the Pleadings with regard to one of the four fabric designs. The design at issue is a "two dimensional graphic artwork with stylized nautical anchors as its primary elements." (Opp'n at 5.) Plaintiff describes the pattern as follows: "the anchors are fancifully drawn, and laid out across the design pane, or 'repeat,' in a jaunty, off-set pattern." (Id.)(hereinafter referred to as "the anchor design").

Defendant generally argues that this design pattern depicts an anchor symbol that is part of the public domain and does not evidence

the requisite degree of creativity and originality to warrant copyright protection.

**III. ANALYSIS**

**A.   Legal Standard**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the opposing party's pleadings.  Fed. R. Civ. Proc. 12(c).  The standard applied to a Rule 12(c) motion is functionally identical to that applied under Rule 12(b)(6) for failure to state a claim.  <u>Dworkin v. Hustler Magazine</u>, 867 F. 2d 1188, 1192 (9th Cir. 1989).  The allegations of the non-moving party must be taken as true, and all reasonable inferences drawn from those facts must be construed in favor of the non-moving party. <u>General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989). "Judgment on the pleadings is proper where the moving party clearly establishes on the face of the pleadings that no material issue of fact remains . . . and that it is clearly entitled to judgment as a matter of law." <u>Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542 (9th Cir. 1989); <u>see</u> <u>R. J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO</u>, 335 F.3d 643, 647 (7th Cir. 2003) (judgment may not be granted "unless it appears beyond a doubt that the [non-moving] party cannot prove any facts that would support his claim for relief").  Where the complaint alleges facts that, if proved, would permit recovery, judgment on the pleadings is improper.  It is immaterial whether the court believes Plaintiff will ultimately prevail at trial.  <u>Wager v. Pro</u>, 575 F.2d 882, 884 (D.C. Cir. 1976).

As with a Rule 12(b)(6) motion, a motion for judgment on the pleadings is confined to the allegations in the complaint, the exhibits thereto, and matters of which the court may take judicial notice. See Hal Roach Studios, 896 F.2d at 1550; Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385, 1388 (9th Cir. 1987). If a party submits extrinsic material to the court in connection with the motion, and the court relies upon such material, it must convert the motion for judgment on the pleadings to a motion for summary judgment under Federal Rule of Civil Procedure 56. Hal Roach Studios, 896 F.2d at 1550.

Finally, although not explicitly mentioned in Rule 12(c), the trial court has discretion to grant a Rule 12(c) motion with leave to amend. Longberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

**B.    Copyright Protection**

Defendant's principal argument it its motion for judgment on the pleadings is that Plaintiff's anchor design is not entitled to copyright protection; thus, Defendant could not be held liable for infringement.

**1.    Presumption of Validity**

Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within 5 years of the copyright's first publication. 17 U.S.C. § 410(c). Once such a certificate is obtained, therefore, the burden shifts to the alleged infringer to demonstrate the invalidity of the registrant's copyright. Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211 (1997). However, the presumption of validity is not

4

difficult to rebut.  An accused infringer can rebut the presumption of validity by "simply offer[ing] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."  Id.

Plaintiff's Complaint clearly alleges that on February 21, 2006, Plaintiff applied for and received a Copyright Registration for the anchor design, under registration code VA 1-356-959.  (Compl. ¶ 19.) Plaintiff received the registration within five years of the first publication of the anchor design, which occurred in the second half of 2006.  (Id. at 18.)  Defendant does not dispute these facts.  (See Reply at 4.)  Thus, Plaintiff's anchor design is entitled to a rebuttable presumption of validity, which Defendant may rebut by offering some evidence to dispute Plaintiff's prima facie case of infringement.

### 2.   Originality

For an item to be entitled to copyright protection, it must exhibit some form of originality.  The threshold level of originality required is admittedly low; "novelty, uniqueness and ingenuity" are not required.  Durham Indust., Inc. v. Tomy Corp., 630 F.2d 905 (2d. Cir. 1980); Feist Publications, Inc. v. Rural Telephone Service Company, Inc., 499 U.S. 340, 345 (1991). Rather, Plaintiff need only show that (1) the author of the work independently created the work - that is, without copying from another work, and (2) the work displays some minimal level of creativity.  Feist, 499 U.S. at 345 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 201.[A],[B] (1990)).  The author must have "some contribution to the work which is irreducibly his own." Todd v. Montana Silversmiths, Inc., 379 F. Supp. 2d 1110, (D. Col. 2005); Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 102

(2d. Cir. 1951)("No matter how poor artistically the 'author's' addition, it is enough if it be his own."). This test of originality is the sine qua non of copyrightability and is a constitutional requirement. <u>Feist</u>, 499 U.S. at 345 (citing <u>Sheldon v. Metro-Goldwyn Pictures Corp.</u>, 81 F.2d 49, 54 (2d. Cir. 1936).

### a. Independent Creation

Plaintiff's work must be the product of independent creation to warrant any copyright protection. This simply means that the plaintiff did not copy the work from something already in existence, but rather created it from his own independent efforts. <u>U.S. v. Hamilton</u>, 583 F.2d 448, 451 n.4 (1978). "Thus, a work will not be denied copyright protection simply because it is substantially similar to a work previously produced by others, and hence, is not novel." 1-2 Nimmer on Copyright § 2.01 (2009). In an often quoted passage, Judge Learned Hand famously- explained:

> Borrowed the work must indeed not be, for a plagiarist is not himself pro tanto an "author"; but if by some magic a man who had never known it were to compose anew Keats's *Ode on a Grecian Urn*, he would be an "author," and, if he copyrighted it, others might not copy that poem, though they might of course copy Keats's.

<u>Sheldon v. Metro-Goldwyn Pictures Corp</u>., 81 F.2d 49, 54 (2d Cir. 1936) (citations omitted).

Thus, even if the Court accepts Defendant's argument that Plaintiff's anchor design is substantially similar, if not identical, to symbols or designs in the public domain (<u>see</u> Mot. at 8-9), as long as Plaintiff alleges that it independently created the anchor design

1    (and sufficient creativity is demonstrated), Plaintiff's copyright

2    claim is sufficient.[1]

3        However, Plaintiff failed to allege in its Complaint that the

4    anchor design was independently created.  Plaintiff's Complaint nowhere

5    references the specific creation of the anchor design by anyone employed

6    by or working on behalf of Plaintiff.  Instead, Plaintiff merely alleges

7    that: "At least as early as the second half of 2006, Plaintiff was

8    publishing and offering for sale a two-dimensional artistic rendering of

9    tiny anchors," and that Plaintiff "applied for and received a . . .

10   Copyright Registration for [the design]."  (Compl. ¶¶ 19-20.)  These

11   allegations are insufficient to demonstrate independent creation of the

12   anchor design.

13       Plaintiff included additional facts in its Opposition regarding

14   independent creation.  Specifically, Plaintiff stated that the design

15   was created "as an original handiwork by Moon Choi," a designer working

16   for Plaintiff.  (Opp'n at 6.)  However, for purposes of this motion, the

17   Court is confined to the pleadings and cannot consider facts or evidence

18   introduced for the first time in the motion briefing.  See Hal Roach

19   Studios, 896 F.2d at 1550.[2]  Thus, the Court finds that Plaintiff has

20   not alleged sufficient facts in support of the element of independent

21   creation, and its copyright claim therefore fails.

22

23

24      [1] Of course, evidence that Plaintiff's anchor design is substantially similar to
25   work already in the public domain may make it more difficult for Plaintiff to prove
     independent creation; however, this is a matter for trial that cannot be resolved
26   on the basis of the pleadings alone.  See Hamilton, 583 F.2d at 451.

27      [2] The Court could rely on the additional facts introduced in Plaintiff's Opposition
     if it were to convert this motion to a motion for summary judgment; however, the
28   Court is inclined to do so under these circumstances.

The Court has the authority to grant leave to amend on a Rule 12(c) motion, and should freely do so where it is apparent that Plaintiff can assert sufficient facts to correct the deficiencies in its complaint. See Fed. R. Evid. 15(a)(2); Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend should be denied only where the court determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency"). Further, the Ninth Circuit has held that a district court should grant leave to amend even if plaintiff did not request it, unless it is clear that the complaint cannot be cured. See Doe v. U.S., 58 F.3d 494, 497 (9th Cir. 1995). In light of this authority, the Court will grant Plaintiff leave to amend its Complaint to allege facts regarding the independent creation of the anchor design.

This does not end the inquiry, however, because the amendment would be futile if Defendant's remaining argument attacking the degree of creativity of Plaintiff's design were successful. Thus, the Court will address whether Plaintiff's design possesses the required degree of creativity to support a valid copyright.

### b.  Degree of Creativity/Quantum of Originality

The second element of copyright protection, and the one most vigorously challenged by Defendant here, is that of creativity, which is also often expressed as "the quantum of originality." 1-2 Nimmer on Copyright § 2.01 (2009). As the Supreme Court explained in Feist, the requisite degree of creativity is "extremely low; even a slight amount will suffice." Feist, 499 U.S. 340 (1991). "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble, or obvious' it may be."

1  <u>Id.</u>   Thus, any distinguishable variation from prior works will

2  "constitute sufficient originality to support a copyright" provided that

3  such variation is the "product of the author's independent efforts, and

4  is more than merely trivial."  1-2 Nimmer on Copyright § 2.01 (2009);

5  <u>Bleinstein v. Donaldson Lithographing Co.</u>, 188 U.S. 239, 251 (1903) ("It

6  would be a dangerous undertaking for persons trained only to the law to

7  constitute themselves judges of the worth of [artistic works], outside

8  the narrowest and most obvious limits.") (Hand, J.)

9       "The requisite originality for copyright protection can also be

10  found in the combination of unoriginal (and therefore uncopyrightable)

11  elements."  <u>Express v. Fetish Group, Inc.</u>, 424 F. Supp. 2d 1211 (C.D.

12  Cal. 2006).   Thus, while facts themselves are not copyrightable, a

13  compilation of facts is copyrightable so long as the author's choices as

14  to selection and arrangement of those facts exhibits a degree of

15  creativity.  <u>Feist</u>, 499 U.S. at 348.   In contrast, where the arrangement

16  itself is inevitable, obvious, or dictated by functionality, the

17  creativity requirement will not be met, and the arrangement will not

18  support a copyright.  <u>Compare</u> <u>Feist</u>, 499 U.S. at 363 (a phone book

19  organized alphabetically is not copyrightable) and <u>Signo Trading Int'l</u>

20  <u>Ltd. v. Gordon</u>, 535 F. Supp. 362, 364 (N.D. Cal. 1981) (denying

21  copyright protection to plaintiff's translation of short words and

22  phrases from English to Arabic where plaintiff's choice of what dialect

23  to use was dictated by the likely users of the translations, and the

24  translation was "fairly mechanical"), <u>with</u> <u>U.S. v. Hamilton</u>, 583 F.2d

25  448, 452-53 (allowing for copyright over a map of Ada County, Iowa where

26  plaintiff's decisions to include elements such as rifle ranges, landing

27  strips, jeep trials, landmarks, and other elements from his independent

28

observation were sufficiently original and creative).  The Ninth Circuit
has held that "a combination of unprotectable elements is  eligible for
copyright protection" but only if "those elements are numerous enough
and their selection and arrangement original enough that their
combination of constitutes an original work of authorship." Satava v.
Lowry, 323 F.3d 805, 811 (9th Cir. 2003).

    Finally, even where individual elements of an author's work are not
copyrightable, and the combination of such elements is also not original
enough to deserve protection, the work may still qualify for "thin"
copyright protection. Id. at 812.  A "thin" copyright exists where the
author makes original, non-trivial contributions to ideas or
compilations already in the public domain.  Id.  A "thin" copyright only
protects the author's original contribution to the work; thus it will
only prohibit "virtually identical copying." Express, 424 F. Supp. 2d
at 1226.

    Satava nicely illustrates this framework.  323 F.3d 805.  In
Satava, the plaintiff created a glass-in-glass jellyfish sculpture,
which was allegedly copied by defendant.  Id. at 808-09.  The trial
court granted plaintiff a preliminary injunction, and defendant
appealed. Id. at 809.  On review, the Ninth Circuit found that the
sculpture was not sufficiently original to qualify for broad copyright
protection.  First, the Ninth Circuit examined the individual elements
of the sculpture and concluded that each was already a standard
expression in the public domain.  Id. at 810-11.  For example, the
features of the jellyfish itself -- its tendril-like tentacles, rounded
bell, and upward swimming motion -- mimicked the features of jellyfish
actually appearing in nature.  Id.  Further, the encasing of the

jellyfish in glass was not original "because clear glass is the most appropriate setting for an aquatic animal." Id. at 811. The proportion and shape of the sculpture were also standard in glass-in-glass sculptures. Thus, these individual elements were not original. Id.

Next, the court considered whether the combination of these unoriginal elements was sufficiently creative to warrant copyright protection. Id. at 811-12. In so doing, the court compared plaintiff's sculpture with several photos of other glass-in-glass jellyfish sculptures. The Court observed that all of the sculptures contained most of the standard elements listed above. Id. at 812. Thus, the combination was not protected.

Nonetheless, the Satava court found that Plaintiff had made original contributions to the sculpture, including the shaping of the jellyfish tentacles, the use of certain hues, and other minor additions. Id. To the extent these aspects were not dictated by the appearance of jellyfish in nature or the glass-in-glass medium, they were sufficiently original to warrant thin copyright protection. Id. The Ninth Circuit explained:

> Satava's copyright on these original elements . . . is 'thin,' however, comprising no more than his original contribution to ideas already in the public domain. Stated another way, Satava may not prevent others from copying elements of expression that nature displays for all observers, or that the glass-in-glass medium suggests to all sculptors. Satava possesses a thin copyright that protects against only virtually identical copying.

Id.

Similarly, in Express v. Fetish Group, Inc., this Court found that plaintiff clothing retailer had thin copyright protection in its original contributions to a tunic design. 424 F. Supp. 2d. 211 (C.D. Cal. 2006). The Court compared plaintiff's tunic to eight other samples submitted by defendant in response to plaintiff's summary judgment motion. Id. at 1226-27. The Court found that the individual elements of plaintiff's tunic -- lace along the hemline, bodice area, upper back, and underneath the bust, as well as a floral design near the hip -- were standard elements used in tunics. Thus, the individual elements were not copyrightable. Id. Further, the elements were also standard elements in combination - that is, most of the other tunics submitted incorporated most of the individual elements in plaintiff's tunic design. Id. at 1227. That said, the court found that plaintiff's embroidery of the floral design near the hip was original and established creativity beyond the combination of standard elements; thus, thin copyright protection was appropriate. Id. Because defendant's tunic was virtually identical to plaintiff's, the Court granted plaintiff's motion for summary judgment. Id. at 1228-29.

Applying these principles to the case at hand, Defendant argues that the anchor symbol used in Plaintiff's anchor design does not possess the requisite degree of originality or creativity because the symbol itself has been "in the public domain for several years." (Mot. at 8.) Defendant further argues that Plaintiff's arrangement of "a single-well recognized and unprotectable symbol with different orientations" falls below the threshold level of originality for a compilation, and does not warrant even thin copyright protection. (Mot. at 9; Reply at 11-12.)

1    In support of its arguments, Defendant requests that the Court take

2  judicial notice of the following evidence: (1) A 1990 publication by the

3  United States regarding nautical symbols and abbreviations, titled

4  *Nautical Chart - Symbols of Abbreviations and Terms*, which depicts an

5  anchor symbol similar to that used in Plaintiff's design; (2) several

6  other nautical charts generated by the National Oceanic Atomospheric

7  Administration, National Ocean Service, and the Department of Defense

8  that depict an anchor symbol similar to that used in Plaintiff's design;

9  (3) evidence derived from an elaborate Internet search depicting anchor

10  designs sold in commerce prior to 2006; and (4) the fact that the actor

11  Murray Hamilton, in his role as Mayor Vaughn in the 1975 movie *Jaws,*

12  wore a powder-blue jacket with a pattern of numerous small white anchor

13  symbols covering the fabric.  (Defendant's Request for Judicial Notice

14  at ¶¶ 1-6; Bergman Decl. In Support of Mot. to Dismiss, Exhs. A-I.)

15    Plaintiff argues that this evidence is not the proper subject of

16  judicial notice and should not be considered on a motion for judgment on

17  the pleadings.  The Court largely disagrees.  Contrary to Plaintiff's

18  contention, Defendant does not seek to admit these materials to

19  establish the truth of any particular fact.  Rather, Defendant merely

20  seeks judicial notice of the fact that these materials exist in the

21  public domain.  (Mot. at 8-9.)  Judicial notice under Federal Rule of

22  Evidence 201 as to the <u>mere existence</u> of these materials is proper to

23  the extent that their existence is readily verifiable by the Court, and

24  is not the subject of reasonable dispute.  Fed. R. Evid. 201; <u>see, e.g.</u>,

25  <u>Shah v. Meeker</u>, 435 F.3d 244 (2d. Cir. 2006) (court can take judicial

26  notice of a published newspaper for the mere fact of publication, but

27  not for the truth of the contents therein); <u>Kramer v. Time Warner Inc.</u>,

28

1  937 F.2d 767, 774 (2d. Cir. 1991) (court may take judicial notice of
2  documents filed in another court to establish the fact of the litigation
3  and related filings, but not for the truth of the matters asserted in
4  the other litigation).

5      O'Keefe v. Ogilvy & Mather Worldwide, Inc. is distinguishable.
6  Case No. 06 Civ. 6278 (SHS), 2006 U.S. Dist. LEXIS 91959 (S.D.N.Y., Dec.
7  18, 2006). In O'Keefe, on a motion to dismiss plaintiff's complaint
8  alleging copyright infringement of an advertisement, defendant requested
9  that the court take judicial notice of several published advertisements,
10 for the proposition that "plaintiff's use of handwriting style and
11 arrows is not unique in advertising and is often used in print and
12 website advertisements." Id. at *1-2 (internal quotations omitted).
13 The court found that the fact that the use of a handwriting style and
14 arrows is common in advertising was not an "indisputable, [generally-
15 known] fact for the Court to take judicial notice of." Id. at *4  Thus,
16 defendant's attempt to extrapolate this "otherwise not-widely known
17 proposition" from the existence of the published advertisements was not
18 proper. Id. The court held that it "cannot make factual inferences
19 based on the content of those advertisements that it could not otherwise
20 make pursuant to its power under Fed. R. Evid. 201." Id. at *5.

21     Here, in contrast, Defendant is not requesting that the Court infer
22 from the existence of the materials submitted that the use of the anchor
23 symbol is common in fabric design or even in the fashion industry more
24 generally; indeed, the Court would not take judicial notice of that
25 inference. (Mot. at 8-9.) Instead, Defendant merely seeks to establish
26 that the anchor symbol has existed in the public domain for some time.
27 (Id.) This fact (existence) is generally known and is not subject to
28

1  reasonable dispute.  Thus, the Court grants Defendant's request for

2  judicial notice as to the publications and photographs contained in

3  Exhibits A, B, and F-I of the Declaration of Rod Berman.

4      However, the Court will not take judicial notice of the Internet

5  results submitted by Defendant.  (Berman Decl., Exhs. C-D.)  These

6  results are not verifiable by readily available sources of <u>indisputable</u>

7  <u>accuracy</u>, and therefore do not meet the requirements of judicial notice.

8  (<u>See</u> Berman Decl. ¶¶ 4-9, Exhs. C-D.)  Further, the Court denies

9  Defendant's request for judicial notice as to the Wikipedia report

10 regarding the 1975 movie *Jaws*.  (Bergman Decl., Exh. E.)  Facts

11 regarding the movie's plot, success, characters, and other details are

12 not relevant to this motion, nor are they the proper subject of judicial

13 notice.

14     In sum, the Court will take judicial notice of the publications of

15 the United States and other organizations regarding nautical symbols,

16 and of the fact that a character in *Jaws* wore a jacket with anchor

17 symbols printed on it.

18     This evidence, however, does not get Defendant very far.  The Court

19 recognizes that there is a large degree of similarity between the anchor

20 symbol used by Plaintiff in its fabric design and the anchor symbol used

21 by the United States in its various publications regarding nautical

22 symbols.  Thus, it can be credibly argued that the individual anchor

23 drawing used throughout Plaintiff's fabric design is not original and

24 consists of only trivial deviations from the expression of anchors in

25 the public domain.

26     But such a finding is not relevant here, because plaintiff's

27 creative arrangement of the anchor symbol in rows drawn slightly askew,

28

1  with different orientations, and different sizes is distinct from

2  anything submitted by Defendant as part of the public domain, and is

3  sufficiently creative to warrant copyright protection.  In <u>L.A. Printex</u>

4  <u>v. Global Gold, Inc.</u>, a case involving the same plaintiff, the court

5  considered on a motion to dismiss whether plaintiff's floral fabric

6  design warranted copyright protection.  The court held that, "the

7  determination of whether particular expression is standard stock-and-

8  trade often cannot be made with out evidence of customs in the

9  industry."  No. CV 08-7316 AHM (JTLx), 2009 WL 453105 (C.D. Cal., Feb.

10  20, 2009); <u>accord</u> <u>Satava</u>, 323 F.3d 805 (court examined dozens of

11  photographs of glass-in-glass jellyfish sculptures in the record);

12  <u>Express</u>, 424 F. Supp. 2d at 1226 (court considered evidence of 8 other

13  tunics similar to that of plaintiff).  Here, Defendant has not submitted

14  any evidence to the Court to indicate that Plaintiff's combination of

15  anchors of various sizes and varying orientations is common or standard

16  in fabric designs.  The only piece of evidence even remotely relevant to

17  this inquiry is that the character Mayor Vaughn in the film *Jaws* wore a

18  jacket with small white anchors printed on it.  One example does not a

19  standard combination make.

20      Moreover, even generously assuming the anchor pattern depicted on

21  the Mayor Vaughn jacket was sufficient to establish that Plaintiff's

22  fabric design implored an unoriginal, standard combination of anchor

23  elements, Plaintiff's variations on that pattern are significantly

24  creative to warrant at least thin copyright protection.  The Court notes

25  that the anchor pattern used on Mayor Vaughn's jacket in *Jaws* depicts

26  anchors that are all the same size, and all oriented topside-up.

27  Conversely, Plaintiff's pattern depicts anchors of various sizes, more

28

1  chaotically arranged, with different orientations, including upside-down
2  and sideways.  These creative decisions to alter what arguably may be a
3  standard arrangement are not obvious or inevitable.  Cf. Feist, 499 U.S.
4  340 (arrangement of a phone book alphabetically was obvious).  Indeed,
5  the simple idea of anchor upside-down or lying to one side is contrary
6  not only to the pattern of the Mayor Vaughn jacket, but also to the
7  understanding of how a physical anchor functions.  A physical anchor
8  would lose its functionality if turned upside-down, as the weight is
9  concentrated in the arms of the anchor.  Thus, unlike the case in
10  Satava, where the orientation of the jelly-fish and its upward swimming
11  motion were dictated by the appearance and actions of the animal in
12  nature, here, the orientation of the anchor in Plaintiff's design is not
13  obviously dictated by the common understanding of an anchor.

14      Given that any distinguishable, non-trivial variation from prior
15  works is sufficient to warrant copyright protection, Plaintiff is, at
16  the very least, entitled to thin protection for its original
17  contribution to the anchor design.

18      The Court therefore finds that Plaintiff's anchor design is
19  sufficiently original to warrant some copyright protection, which is all
20  that is necessary to defeat Defendant's arguments regarding originality
21  at this stage in the pleadings.

22      However, because Plaintiff failed to plead facts evidencing
23  independent creation, as stated above, the Court will grant Defendant's
24  motion for judgment on the pleadings with leave to amend.

25  ///

26  ///

27  ///

28

**IV.    CONCLUSION**

     For the reasons stated above, the Court hereby GRANTS Defendant's motion for judgment on the pleadings.   Plaintiff is given 20 days leave to amend its Complaint.



             IT IS SO ORDERED.

DATED:   October 27, 2009

                                                    _____
                                                    STEPHEN V. WILSON
                                                    UNITED STATES DISTRICT JUDGE